UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNA WHITEHEAD,

    Plaintiff,

v().                                                   Case No. 8:22-cv-1482-WFJ-CPT

FLORIDA DELIVERY SERVICES, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before me on referral is Plaintiff Anna Whitehead's renewed motion for a default judgment. (Doc. 24). For the reasons set forth below, I respectfully recommend that Whitehead's renewed motion be granted in part and denied in part.

I.

Whitehead initiated this action in June 2022 against her former employer, Defendant Florida Delivery Services, Inc. (FDS), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (PDA), and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.* (FCRA). (Doc. 1). In her complaint, Whitehead avers that FDS hired her as a delivery driver in mid-November 2020 and that she learned she was pregnant shortly thereafter. *Id.* ¶¶ 2, 24, 25. Whitehead further avers that although her doctor

subsequently told her not to lift "packages over [twenty-five pounds]," she "was still able to complete the majority of her regular routes" and was otherwise qualified to perform her job duties at all material times. *Id.* ¶¶ 16, 26, 36, 51.

Nonetheless, Whitehead alleges that after she advised her supervisor of her pregnancy a couple of weeks later, he told her that he "could not accommodate" her condition and that she should "take the next day off." *Id.* ¶¶ 25, 27. According to Whitehead, she was then "offered a route on a day she had a previously scheduled doctor's appointment" and was ultimately removed from "the schedule completely." *Id.* ¶ 28. Whitehead additionally avers that FDS did not respond to her ensuing attempts to return to her position and also refused to reinstate her. *Id.* ¶ 29. Whitehead further avers that when she complained to FDS about how she was being treated, FDS retaliated against her. *Id.* ¶¶ 68, 69.

Based upon these allegations, Whitehead asserts claims for sex and pregnancy discrimination, as well as for retaliation under Title VII/PDA (Counts I, III)[1] and the FCRA (Counts II, IV). (Doc. 1). For relief, Whitehead seeks, *inter alia*, back pay (plus an equal amount in liquidated damages), front pay, lost benefits, damages for both

---

[1] Two points of clarification are necessary relative to Whitehead's discrimination claim in Count I. First, it is denominated as being predicated on Whitehead's "gender" even though Title VII forbids discrimination on the basis of "sex." *See* 42 U.S.C. § 2000e-2(a)(1); *see also Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1276 n.6 (M.D. Ala. 2016) (noting that the plaintiff styled her Title VII claim as one for "gender discrimination" despite the fact that Title VII prohibits discrimination "because of . . . sex") (quoting 42 U.S.C. § 2000e-2). As a result, I deem Count I to aver "sex" rather than "gender" discrimination. Second, because pregnancy discrimination is a component of sex discrimination, *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015), and because it is evident from Whitehead's complaint that such discrimination is the crux of her allegations, I read Count I—as I have described it above—to assert both sex and pregnancy discrimination.

emotional distress and pain and suffering, reinstatement, injunctive relief, as well as attorneys' fees and costs. *Id.*

After filing her complaint, Whitehead effectuated service of process on FDS through its registered agent. (Doc. 8). When FDS failed to answer or otherwise respond to her complaint, Whitehead sought and obtained a clerk's default against it. (Docs. 9, 10).

In November 2022, Whitehead moved for a default judgment against FDS in the amount of $80,000. (Doc. 14). The Court denied this request without prejudice, concluding that Whitehead did not submit adequate evidence demonstrating the requested damages figure. (Doc. 15). The Court informed Whitehead that if she wished to renew her motion, she would need to provide more detailed affidavits supporting the requested damages sum and to address the matter of "mitigation of damages through other employment, etc." *Id*.

In response to the Court's ruling, Whitehead again moved for a default judgment, this time in the amount of $57,300. (Doc. 16). The Court also denied that motion without prejudice because, "[a]mong other things, the motion fail[ed] to set forth the elements of [Whitehead's] claims against [FDS]" and did not "show how the well-pleaded allegations of the complaint establish[ed] those elements." (Doc. 17).

In light of these infirmities, as part of its decision, the Court directed that Whitehead file an amended motion for a default judgment by a certain deadline. *Id*. The Court advised Whitehead in this respect that any such motion must be "supported by a memorandum of law containing citations to the complaint (by paragraph number)

3

and applicable law that addresses all of the prerequisites for the requested relief, including the Court's jurisdiction over the claims and the parties," the "elements of [Whitehead's] claims against [FDS]," and "whether the well-pleaded allegations in the complaint establish[ed FDS's] liability and [Whitehead's] damages." *Id*. The Court further instructed Whitehead to set forth in her filing "how she reached her proposed damages figure, the legal basis for her entitlement to attorney's fees, and [the] evidence buttressing the reasonableness of the amounts sought." *Id.* As to the latter point, the Court noted that Whitehead "included an affidavit by her attorney indicating that an exhibit supported the costs his firm incurred, but [that] no such exhibit seem[ed] to be attached [to her motion]." *Id*.

Whitehead then submitted an amended motion for a default judgment, again in the amount of $57,300. (Doc. 18). In contravention of the Court's directives, however, Whitehead did not (1) cite to the complaint by the paragraph number; (2) describe how she reached her requested damages amount; (3) attach any exhibits supporting the costs incurred; or (4) show that the Court had jurisdiction over the claims and parties. (Doc. 18). Whitehead also neglected to make clear in her motion the particular relief she sought. *Id.*[2]

Given these defects with Whitehead's motion, the Court scheduled a hearing to facilitate a more efficient disposition of the matter. (Doc. 20). At that proceeding, the

---

[2] For instance, Whitehead seemingly asked for a default judgment only as to her sex and pregnancy discrimination claims despite the fact that her complaint contained retaliation claims as well. (Doc. 18).

4

Court reviewed the above issues with Whitehead before denying her motion without prejudice, and instructed her either to file another amended motion for a default judgment or to seek leave to revise her complaint. (Doc. 22). The Court emphasized in doing so that Whitehead was to "ensure . . . that any such renewed motion fully addresses the topics and deficiencies identified by the Court at the . . . hearing." *Id*.

The instant motion followed. By way of that submission, Whitehead asks that the Court enter a default judgment against FDS premised on both sex and pregnancy discrimination, and award her $44,480 in damages, $17,500 in attorney's fees, and $503.80 in costs. (Doc. 24). Whitehead's sought-after damages consist of "roughly" $9,680 in back pay, $25,000 in compensatory damages, and $10,000 in punitive damages.[3] (Doc. 24). FDS has not filed an objection to Whitehead's motion, and the time for doing so has expired. The motion is accordingly ripe for the Court's consideration.

## II.

Federal Rule of Civil Procedure 55 provides that where, as here, a clerk's default has been entered, a plaintiff may apply to either the clerk or the court for the entry of a default judgment. Fed. R. Civ. P. 55(b). Prior to granting such relief, however, a court must "ensure that it has jurisdiction over the claims and parties." *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020). Part of this

---

[3] Whitehead's proposed damages totals $44,680, not $44,480.

inquiry requires a court to confirm that the defendant which is the subject of the default judgment has been properly served with the complaint. *Opella v. Rullan*, 2011 WL 2600707, at *4 (S.D. Fla. June 29, 2011) ("Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit."), *report and recommendation adopted*, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

If jurisdiction is established, a court must then ascertain whether "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) ("The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (per curiam) (citing *Surtain*, 789 F.3d at 1245);[4] *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted).  Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claim is properly pleaded, a court must then address the issue of damages. A court may conduct an evidentiary hearing on that question, Fed. R. Civ. P. 55(b)(2)(B), but need not do so where the sought-after damages constitute a liquidated sum, are capable of mathematic calculation, or "where all essential evidence is already of record," *Secs. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citation omitted); *see also Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (observing that a court may grant statutory damages which are predicated "upon affidavits and other documentary evidence if the facts are not disputed"); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (finding that a hearing was unnecessary where the plaintiff requested statutory damages and "attached detailed declarations with accompanying documentary evidence" to its motion for a default judgment). Resolution of the damages issue is ultimately left to a court's sound discretion. *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 775 (11th Cir. 2014); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 912 (11th Cir. 2011) (per curiam).

Each of these issues—jurisdiction, liability, and damages—will be addressed in turn.

A.

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. Such laws include Title VII and the PDA. *Andre v. Harbor Naples Mgmt., LLC*, 2008 WL 11334889, at *3 (M.D. Fla. Aug. 14, 2008) (noting that the court had jurisdiction over

the case under section 1331 since it was "brought pursuant to [Title VII] as amended by the [PDA]"). Therefore, the Court has subject matter jurisdiction over Whitehead's federal claims here. The Court also has supplemental jurisdiction over Whitehead's state law claims under the FCRA because those counts "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Matthew v. Hi\*Tech Elec. Displays, Inc.*, 2005 WL 5950966, at \*5 (M.D. Fla. Oct. 17, 2005) (determining that the court had subject matter jurisdiction over the plaintiff's Title VII claims and supplemental jurisdiction over the plaintiff's FCRA claims).

The Court likewise has personal jurisdiction over FDS. "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)). "Amenability to jurisdiction" means that a particular defendant is within the substantive reach of the court's jurisdiction under the governing law. *DeMelo*, 711 F.2d at 1264 (citation omitted). Service of process, on the other hand, "is simply the physical means by which that jurisdiction is asserted." *Id.* (citation omitted).

Here, according to the complaint, FDS "own[ed], control[led], and operate[d]" a delivery company in Florida. *See* (Doc. 1 at ¶ 4). As such, it is "within the substantive reach of" the Court's jurisdiction. *DeMelo*, 711 F.2d at 1264; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business

8

constitutes the "paradigm forum for the exercise of general jurisdiction"); *Subic Bay Marine Expl., Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. Dist. Ct. App. 2018) ("[C]orporations incorporated under Florida law are Florida residents, subject to the general jurisdiction of Florida's courts.") (citation omitted). Furthermore, the return of service filed in this action shows that FDS was properly served with the summons and complaint through its registered agent in accordance with the applicable Florida Statute. *See* Fla. Stat. § 48.081(2) ("A domestic corporation . . . may be served with process required or authorized by law by service on its registered agent designated by the corporation under chapter 607 or chapter 617, as applicable."). I therefore find that the Court has jurisdiction over both the claims and the parties.

B.

Turning to the issue of liability, Whitehead seeks a default judgment solely as to her claims for sex and pregnancy discrimination under Title VII/PDA and the FCRA as alleged in Counts I and II, respectively. (Doc. 24). Whitehead does not request a default judgment regarding her retaliation claims asserted in Counts III and IV. *Id*.

Title VII states, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Under the FCRA, it is likewise unlawful for an employer to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms,

9

conditions, or privileges of employment, because of such individual's . . . sex[ or] pregnancy." Fla. Stat. § 760.10(1)(a).  The FCRA was patterned after Title VII, so case law construing Title VII applies to claims under the FCRA as well.  *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the [FCRA], because the Florida act was patterned after Title VII.") (citations omitted); *Bielawski v. Davis Roberts Boeller & Rife, P.A.*, 2020 WL 2838811, at *2 (M.D. Fla. June 1, 2020) ("[B]ecause the FCRA is modeled after Title VII, plaintiff's claim [for pregnancy discrimination] under that statute is analyzed under the same framework and does not require separate discussion.") (citations omitted).

As for the PDA, it amended Title VII to "make[ ] clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young*, 575 U.S. at 210.  The PDA accomplished this goal by adding new language in the form of two clauses to the definitional subsection of Title VII.  *Id.* at 212.  The first of these clauses specifies that unlawful sex discrimination under Title VII includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).  The second clause states that employers must treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id*.

Intentional employment discrimination—such as pregnancy discrimination—can be proven in one of three ways: (1) by presenting direct evidence of discriminatory

10

intent; (2) by satisfying the burden–shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by producing a "convincing mosaic" of circumstantial evidence warranting an inference of intentional discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 & n.6 (11th Cir. 2019) (en banc) (citation omitted); *see also Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312–13 (11th Cir. 1994) ("The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits.") (citing *Maddox v. Grandview Care Ctr., Inc.*, 780 F.2d 987, 989 (11th Cir. 1989)). To state a prima facie case for pregnancy discrimination, a plaintiff must establish that "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012).

The elements of this prima facie case differ slightly if the plaintiff brings a claim under the second clause of the PDA on the ground that her employer failed to offer her an accommodation. *See Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020). To make out a prima facie case for such a claim, a plaintiff must demonstrate that (1) "she belongs to the protected class;" (2) "she sought accommodation;" (3) "the employer did not accommodate her;" and (4) "the employer did accommodate others 'similar in their ability or inability to work.'" *Young*, 575 U.S. at 229.

11

Although a prima facie case is ultimately required to survive summary judgment, "[a] Title VII complaint need not allege facts sufficient to make out a classic prima facie case" at the pleading stage. *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). Instead, all that is required to prevail at the pleading stage is that the complaint contain enough "factual matter, which, accepted as true, states a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Since a motion for default judgment is "like a reverse motion to dismiss for failure to state a claim," the above standard that applies to a motion to dismiss in Title VII actions also governs a motion for a default judgment. *Surtain*, 789 F.3d at 1245 (citations omitted). In other words, a plaintiff seeking a default judgment for sex or pregnancy discrimination need only "provide enough factual matter (taken as true) to suggest intentional discrimination." *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 917 (11th Cir. 2015) (per curiam) (quotation marks omitted). A complaint crosses this threshold when it avers enough facts to support a reasonable inference that the defendant engaged in the alleged misconduct. *Id.* at 915.

Here, as referenced previously, Counts I and II in Whitehead's complaint assert claims for sex and pregnancy discrimination under Title VII/PDA and the FCRA, respectively. (Doc. 1). While—as also discussed earlier—Whitehead could have pleaded her pregnancy discrimination claim more clearly, I find that she is entitled to relief on that cause of action as it relates to FDS's decision to terminate her.

In support of this determination, I note that, as explained above, Whitehead avers in her complaint that not long after she told her supervisor she was pregnant and not long after her supervisor told her that he could not accommodate her condition, she was removed from the schedule and then fired one month later despite being qualified for the position and having no performance-related issues. (Doc. 1 at ¶¶ 24–32). Whitehead also avers that FDS "did not subject the male employees to discriminatory treatment" and did not have a "legitimate, non-discriminatory reason for discharging" her. *Id.* ¶¶ 38, 41.

Although somewhat thin, these allegations include sufficient factual matter to plausibly suggest that FDS intentionally discriminated against Whitehead based on her pregnancy. *See Surtain*, 789 F.3d at 1246. As such, the allegations provide adequate grounds to sustain a default judgment on this issue. *See, e.g.*, *Key v. Hyundai Motor Mfg., Ala., LLC*, 2021 WL 3909663, at *11 (M.D. Ala. Aug. 31, 2021) ("The [p]laintiff has plausibly pleaded enough facts to demonstrate that the very close temporal proximity of her disclosing her pregnancy was linked to the beginning of the [d]efendants' alleged discriminatory conduct. The extremely close temporal proximity alleged here is enough to survive a motion to dismiss.") (citing *Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)); *Stephens v. Adler Social, LLC*, 2021 WL 5084236, at *4 (S.D. Fla. Mar. 12, 2021) ("The [c]omplaint contains enough factual allegations to plausibly suggest intentional discrimination. [The p]laintiff's supervisor's statements that the owners would not like that she is pregnant, the proximity of the [d]efendant's actions and [the p]laintiff's termination to her disclosure

of pregnancy, and the change in [the p]laintiff's treatment immediately following the disclosure of her pregnancy all strongly suggest intentional discrimination."); *DeJesus v. Fla. Cent. Credit Union*, 2018 WL 4931817, at *3–4 (M.D. Fla. Oct. 11, 2018) ("[The plaintiff] alleged that she is a member of a protected class based on her sex and her pregnancy, that she was qualified for her position based on her outstanding performance evaluation, and that she was terminated for her preapproved absence to have a medical procedure to terminate her pregnancy. Based on these allegations, [the plaintiff] has pleaded enough factual matter to survive dismissal."). Accordingly, a default judgment on Whitehead's pregnancy discrimination claims under Title VII/PDA and the FCRA is warranted.

Whitehead, however, has not demonstrated that there is an adequate basis for a default judgment on her separate claims for sex discrimination and retaliation. Whitehead does not address her sex discrimination claim in her motion other than to state in conclusory fashion that her arguments for pregnancy discrimination extend equally to her sex discrimination claim. (Doc. 24 at 10). And Whitehead does not mention her retaliation claims in her motion at all. *Id*. Thus, Whitehead's request for a default judgment on these claims fails.

C.

As noted above, if a claim for liability is properly pleaded, a court must then assess its ability to measure damages. To this end, a "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement*

14

*Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on a motion for default judgment only if the record adequately reflects the basis for the award). A plaintiff seeking such an award, however, "must *show* [a c]ourt what those damages are, how they [were] calculated, and where they c[a]me from," rather than "merely *telling* the [c]ourt in summary fashion what its damages are." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010). Moreover, as also noted above, an evidentiary hearing is required to resolve the issue of damages except where the sought-after damages figure is a liquidated sum, is capable of mathematic calculation, or "where all [the] essential evidence is already of record." *Smyth*, 420 F.3d at 1232, n.13 (citation omitted).

Measured against these standards, Whitehead's damages request fails as well. Whitehead does not include any evidence from which the Court can conclude with any certainty that she is entitled to the damages amount she seeks. To illustrate the lack of clarity on this matter, while Whitehead previously submitted an affidavit setting forth some detail to buttress her then request for $57,000 in lost wages (Doc. 16-1), she now seeks only $44,480 in *total* damages (Doc. 24), including back pay. Further, Whitehead's back pay figure of "roughly" $9,680 appears to be only an estimate and thus does not constitute the type of precise sum needed to calculate a damages award on a motion for a default judgment. *Id.* Nor does Whitehead submit verified proof substantiating this sum, other than filing her prior affidavit.

15

In addition, Whitehead does not offer any sworn statements detailing the allegations underlying her claims for compensatory and punitive damages. Instead, she relies solely on her counsel's assertions regarding the "substantial emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life" she allegedly suffered due to her termination. *Id.* at 12–13.

Whitehead's request for attorney's fees is similarly infirm. Although Whitehead seeks fees in the amount of $17,500, she does not provide an affidavit or an itemized list of services her lawyer rendered to support the hourly rate charged and the number of hours expended. *Id.* at 14–15. The same can be said of Whitehead's request for costs in the amount of $503.83, which are not buttressed by any exhibits. *Id.* at 15. In sum, despite the Court's prior instructions, Whitehead does not tender the necessary documentation to prove her entitlement to the sought-after damages figure.

### III.

Based upon the foregoing, I respectfully recommend that the Court:

1. Grant Whitehead's motion for a default judgment (Doc. 24) only as to the issue of liability on her pregnancy discrimination claims under Title VII/PDA and the FCRA and otherwise deny Whitehead's motion without prejudice.

2. Instruct Whitehead to file a renewed motion for a default judgment by February 19, 2024, that contains sufficient detail to support the requested damages figure to the extent it is a liquidated sum, or to file a motion by that date seeking an evidentiary hearing.

Respectfully submitted this 19th day of January 2024.

*[Signature]*

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable William F. Jung, United States District Judge
Counsel of record