UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNA WHITEHEAD,

    Plaintiff,

v.                                                      Case No. 8:22-cv-1482-WFJ-CPT

FLORIDA DELIVERY SERVICES, INC.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before me on referral is Plaintiff Anna Whitehead's *Third Motion for Entry of Default Final Judgment on the Issue of Damages*. (Doc. 48). For the reasons set forth below, I respectfully recommend that Ms. Whitehead's motion be granted in part and denied in part.

I.

The background of this matter is set forth in prior Orders of the Court (Docs. 26, 27), but bears repeating here with some supplementation. Ms. Whitehead initiated this action in June 2022 against her former employer, Defendant Florida Delivery Services, Inc. (FDS), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)

(PDA),[1] and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.* (FCRA).  (Doc. 1).  In her complaint, Ms. Whitehead avers that FDS—a modest-sized Tampa company consisting of more than a dozen employees—hired her as a delivery driver in November 2020 and that she learned she was pregnant shortly thereafter.  *Id.* ¶¶ 2, 10, 24, 25.  Ms. Whitehead further avers that although her doctor subsequently told her not to lift "packages over [twenty-five pounds]," she "was still able to complete the majority of her regular routes" and was otherwise qualified to perform her job duties at FDS at all material times.  *Id.* ¶¶ 16, 26, 36, 51.

Nonetheless, Ms. Whitehead alleges that after she advised FDS's owner, Srini Nelluri, of her pregnancy a couple of weeks later, he told her that he "could not accommodate" her condition and that she should "take the next day off."  *Id.* ¶¶ 25, 27; (Doc. 47 at 6–7).  According to Ms. Whitehead, she was then "offered a route on a day she had a previously scheduled doctor's appointment" and was eventually removed from "the schedule completely."  (Doc. 1 at ¶ 28).  Ms. Whitehead additionally avers that FDS did not respond to her ensuing attempts to return to her position and that when she complained to FDS about how she was being treated, FDS retaliated against her.  *Id.* ¶¶ 29, 68, 69.

Based upon these allegations, Ms. Whitehead asserts claims for sex and pregnancy discrimination, as well as for retaliation under Title VII (Counts I, III) and

---

[1] As discussed in an earlier decision in this case, the PDA amended Title VII to "make[ ] clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015).  For the sake of simplicity, I will refer to the PDA and Title VII collectively as Title VII.

the FCRA (Counts II, IV). (Doc. 1). After filing her complaint, Ms. Whitehead effectuated service of process on FDS through its registered agent. (Doc. 8). FDS, however, failed to answer or otherwise respond to that pleading, which led Ms. Whitehead to seek and obtain a clerk's default against it. (Docs. 9, 10).

Ms. Whitehead then filed a motion for a default judgment on her sex and pregnancy discrimination claims but not on her retaliation claim. (Doc. 24). As part of her motion, Ms. Whitehead asked that she be awarded $44,480 in compensatory and punitive damages, $17,500 in attorney's fees, and $503.80 in costs.[2] *Id.*

After careful review, I issued a Report and Recommendation proposing, *inter alia*, that the Court grant Ms. Whitehead's motion only as to FDS's liability on her pregnancy discrimination claims under Title VII and the FCRA and that the Court deny the remainder of her motion without prejudice. (Doc. 26). Of significance here, I found that Ms. Whitehead's requests for damages, fees, and costs were not adequately supported and that they would have to be resolved by way of an evidentiary hearing or more detailed submissions. *Id.* The Court adopted my recommendations (Doc. 27), and an evidentiary hearing was thereafter scheduled to address Ms. Whitehead's claims for monetary relief (Docs. 30, 43).

At that proceeding, Ms. Whitehead testified about her employment at FDS, where she said she earned $150 per day, and her subsequent termination approximately one month later—on December 11, 2020—after she announced her

---

[2] Ms. Whitehead's motion for a default judgment was preceded by several failed attempts to secure the same relief. *See* (Docs. 14, 15, 16, 17, 18, 22).

pregnancy (Doc. 47 at 5). Ms. Whitehead also described her unsuccessful efforts to obtain employment that would offer her a comparable level of compensation following her dismissal. *Id.* at 9–13, 18–21. In addition, Ms. Whitehead explained the stress she experienced due to being let go by FDS, especially since she was a pregnant single mother with two children at the time. *Id.* at 14. Ms. Whitehead testified as well that she ultimately went on maternity leave in June 2021 and that she does not seek back pay after that point. *Id.* at 7, 12–13; (Doc. 48 at 7).

At the conclusion of the evidentiary hearing, I directed Ms. Whitehead to submit a memorandum that included, *inter alia*: (1) a calculation of the precise sums she sought, buttressed by financial documents and testimony from the evidentiary hearing; (2) an affidavit and case law justifying the hourly rate charged by her counsel; and (3) invoices supporting her claimed costs. (Doc. 46). The instant motion followed. (Doc. 48).

## II.

Federal Rule of Civil Procedure 55 provides that where, as here, a clerk's default has been entered, a plaintiff may apply to either the clerk or the court for the entry of a default judgment. Fed. R. Civ. P. 55(b). Prior to granting such relief, a court must ensure, among other things, that there are adequate factual averments in the plaintiff's well pleaded complaint which demonstrate that a defendant is liable for the misconduct alleged. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir.

4

2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[3]

If liability is established, a court must then address the matter of damages. To prevail on this issue, a plaintiff "must *show* [a c]ourt what th[e] damages are, how they [were] calculated, and [from] where they c[a]me." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010). In the end, a court may not award damages to a plaintiff unless there is a "legitimate basis" for doing so. *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be granted on a motion for default judgment only if the record properly reflects the basis for the award).

In this case, as noted above, the Court has already determined that FDS is liable to Ms. Whitehead on her pregnancy discrimination claims pursuant to Title VII and the FCRA. (Doc. 27). The only question now is what is the sum to which she is entitled. To answer that question, I begin with the scope of monetary relief that a plaintiff may recover under Title VII and the FCRA.

It has long been recognized that "Title VII's purpose is to 'make whole' victims of unlawful employment discrimination." *Collins v. Koch Foods, Inc.*, 2022 WL 1741775, at *3 (11th Cir. May 31, 2022) (per curiam) (quoting *Abermale Paper Co. v.*

---

[3] As pointed out in the Court's previous Orders (Docs. 26, 27), a plaintiff must also prove that a court has jurisdiction over the claims and parties, *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020).

*Moody*, 422 U.S. 405, 418–419 (1975)). Thus, an employer found to have intentionally engaged in an unlawful employment practice in violation of Title VII may be charged with back pay, along with compensatory damages for any "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" experienced by a plaintiff. 42 U.S.C. §§ 1981a(a)(1), (b)(3), 2000e-5(g)(1), (k). A Title VII plaintiff may also obtain punitive damages from an employer, as well as reasonable attorney's fees and costs. *Id*. An award of compensatory and punitive damages under Title VII, however, is capped at $50,000 for employers the size of FDS. *See* 42 U.S.C. § 1981a(b)(3)(A); *see also* (Doc. 1 at 3) (alleging that FDS employs more than fifteen employees).

Similar to Title VII, a plaintiff who establishes that an employer contravened the FCRA may be granted back pay, compensatory damages for, *inter alia*, mental anguish, loss of dignity, and any other intangible injuries, punitive damages, and attorney's fees and costs. Fla. Stat. § 760.11(5) (2019). Punitive damages under the FCRA, however, may not exceed $100,000. *Id.*

Against this backdrop, Ms. Whitehead maintains that FDS should pay her $8,530 in back pay, $25,000 in compensatory damages, $10,000 in punitive damages, $9,525 in attorney's fees, and $692.18 in costs. (Doc. 48). To bolster this claim, Ms. Whitehead relies on both the testimony she offered at the evidentiary hearing and the other evidence she submitted to the Court. *Id*. I will address in turn each of the forms of monetary relief sought by Ms. Whitehead.

A.

It is well settled that a successful Title VII plaintiff is "presumptively entitled to back pay" starting from the date of the adverse employment action until the date of the judgment. *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999); *see also Collins*, 2022 WL 1741775 at *4. To ascertain the amount of back pay, a court must calculate "the difference between the actual wages earned [by the plaintiff] and the wages [she] would have earned in the position that, but for the discrimination, [she] would have attained." *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) (citation omitted). Any sums a plaintiff was paid after the adverse employment action and before the entry of judgment, however, must be subtracted from any back pay award. 42 U.S.C. § 2000e–5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). That said, the Eleventh Circuit has cautioned that courts computing back pay need not do so with "unrealistic exactitude" and may base their determinations on a "'just and reasonable inference' of the missing or imprecise figure." *Akouri*, 408 F.3d at 1343 (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260 (5th Cir. 1974)).

Here, the back pay Ms. Whitehead requests is confined to the time frame between the date of her termination from FDS (i.e., December 11, 2020) and when she stopped working in June 2021. (Doc. 48 at 6–7). As discussed previously, Ms. Whitehead testified that her daily compensation at FDS was $150, which equates to a weekly salary of $750. (Doc. 47 at 5). According to Ms. Whitehead, she was

7

unemployed for three weeks after she left FDS and subsequently found a series of jobs, each lasting two to three weeks, where she earned between $11 to $15.50 per hour.[4] *Id*. at 9–13, 18–21. Ms. Whitehead stated that she was then hired by a company named Sykes, where she worked from April to June 2021 and where she was paid less than what she received at FDS. *Id.* at 12–13. While Ms. Whitehead could not recall her exact pay rate at Sykes, her attorney conservatively estimated it to be $50 less per week than what she earned at FDS. *Id*. at 13; (Doc. 48 at 7). In light of Ms. Whitehead's post-FDS employment, I find that she is entitled to back pay in the amount of $5,650.

B.

Compensatory damages must be grounded upon "competent" and "sufficient" evidence, which includes a plaintiff's testimony that she "suffered demonstrable emotional distress," as long as the testimony is adequately "articulated." *Akouri*, 408 F.3d at 1344–45 (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). Compensatory damages may be "inferred from the circumstances as well[.]" *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978)). A court is ultimately afforded a "'great deal of discretion in

---

[4] Although Ms. Whitehead's testimony about her pay rates and the number of weeks she held these positions was somewhat vague, her back pay calculations appear to be understated, and I therefore adopt them here with one important caveat. *See* (Doc. 48 at 5–7). In three instances, Ms. Whitehead estimated the back pay amount she was owed based on her weekly salary without subtracting that figure from what she could have earned at FDS. *See id.* (estimating a pay deficit of $1,080 for two weeks of work earning $13.50 per hour; a pay deficit of $1,200 for three weeks of work earning $15.00 per hour; and a pay deficit of $1,860 for three weeks of work earning $15.50 per hour). I also note that while Ms. Whitehead provided her W-2s to the Court, her testimony offered more clarity on these matters. (Doc. 48-3).

8

deciding the level of damages to be awarded.'" *Akouri*, 408 F.3d at 1344–45 (quoting *Ferrill*, 168 F.3d at 476).

Here, as noted above, Ms. Whitehead seeks $25,000 in compensatory damages. To buttress this figure, Ms. Whitehead testified at the evidentiary hearing that she felt stressed upon being terminated by FDS because she feared she would not be able to support her two children. (Doc. 47 at 14). Ms. Whitehead added that her distress did not "subside" until towards the end of her pregnancy. *Id.*[5]

After careful evaluation of Ms. Whitehead's testimony, which was sparse, I recommend that her request for compensatory damages be reduced to $5,000. This amount recognizes the emotional difficulties Ms. Whitehead claims she experienced after being let go by FDS but also takes into account the short duration of her employment at FDS, as well the limited details she provided regarding the effects her firing had on her mental and physical well-being. This sum also reflects that Ms. Whitehead was able to obtain alternative work just three weeks later, even though it was not at the same pay rate she enjoyed at FDS, and that she did not supply any corroborative proof from her friends or relatives as to her condition during the relevant period. *See, e.g.*, *Servillo v. Sola Medi Spa, LLC*, 2021 WL 3194799, at *4 (M.D. Fla. July 13, 2021) (reducing a plaintiff's non-economic damages request from $15,000 to

---

[5] Ms. Whitehead attempts in her motion to supplement this testimony with other allegations. (Doc. 48 at 9). As Ms. Whitehead did not supply this information during her testimony, however, I do not consider it here. *See Akouri*, 408 F.3d at 1344–45 (explaining that compensatory damages may be proven by "competent" and "sufficient" evidence). And even if I did consider these averments, they would not materially alter my analysis.

9

$2,000 based on allegations of sexual harassment and retaliation because the plaintiff did not explain the severity of his symptoms or tender testimony by friends, relatives, or colleagues on his behalf), *report and recommendation adopted*, 2021 WL 3190558, at *1 (M.D. Fla. July 28, 2021); *Arain v. Double R. Remodeling, Inc.*, 2010 WL 11507298, at *3 (M.D. Fla. Apr. 21, 2010) (finding the plaintiff's testimony inadequate to support an award of damages for emotional distress where, among other things, he "failed to provide any testimony from medical professionals or others that he was or is indeed suffering from any kind of long term emotional effects"), *report and recommendation adopted*, 2010 WL 11507299 (M.D. Fla. May 20, 2010).

## C.

To obtain an award of punitive damages, a prevailing party must show that her employer engaged in a discriminatory practice with either malice or a "reckless indifference to the [party's] federally protected rights[.]" 42 U.S.C. § 1981a(b)(1). Malice in this context means "an intent to harm," while recklessness means a "serious disregard for the consequences of one's actions." *E.E.O.C. v. v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (internal quotation marks and citation omitted); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (finding that to meet the reckless indifference standard, an employer "must at least discriminate in the face of a perceived risk that its actions will violate federal law").

As referenced earlier, Ms. Whitehead seeks $10,000 in punitive damages. (Doc. 48 at 10). To bolster this request, Ms. Whitehead alleges in her complaint that FDS knew about the discrimination against her and acted with a reckless disregard for her

rights. (Doc. 1). Ms. Whitehead also testified at the hearing that FDS's owner, Mr. Nelluri, intentionally ignored the laws prohibiting pregnancy discrimination so that he could make more money. (Doc. 47 at 17). These averments are sufficient to justify the sought-after punitive damages figure. *See Krempasky v. Hendricks Rest. Holdings, LLC*, 2019 WL 11790575, at *3–4 (N.D. Ga. July 17, 2019) (awarding punitive damages where the employer's owner threatened to fire the plaintiff and her boyfriend if the plaintiff did not accept a demotion due to her pregnancy); *see also E.E.O.C. v. Excel, Inc.*, 884 F.3d 1326, 1331–32 (11th Cir. 2018) (explaining that a discriminating employee's conduct may be imputed to a company where the employee "was high up the corporate hierarchy") (internal quotation marks, alterations, and citation omitted); *Servillo*, 2021 WL 3194799, at *4 (concluding that the discriminatory conduct engaged in by a business's sole owner who was involved in the day-to-day management was properly imputed to the business in assessing punitive damages). The fact that this punitive damages sum roughly equates to the total amount of back pay and compensatory damages that I recommend be granted further buttresses the merits of this figure. *See Servillo*, 2021 WL 3194799, at *5 (deeming a 1:1 ratio of compensatory damages to punitive damages to be appropriate).

### D.

A court is authorized under Title VII to award attorney's fees to the prevailing party. *See* 42 U.S.C. § 2000e-5(k); *see also Sublett v. Landshark Group, Inc.*, 2021 WL 5055074, at *11 (N.D. Fla. Aug. 26, 2021) ("Title VII . . . allows the prevailing party to receive from the loser a reasonable attorney's fee in addition to other relief."), *report*

*and recommendation adopted*, 2021 WL 5052729 (N.D. Fla. Nov. 1, 2021). To determine the amount of the fee award, a court must calculate the "lodestar" by multiplying the reasonable hourly rate by the reasonable hours expended in the litigation. *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1164 (11th Cir. 2017). A "reasonable hourly rate" is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). Once computed, the lodestar is deemed to be "a presumptively reasonable fee." *Yellow Pages Photos, Inc.*, 846 F.3d at 1164 (citation omitted)

That said, a court is itself viewed as an expert on fee matters. *See Norman*, 836 F.2d at 1303 (citation omitted). As a result, it "may consider its own knowledge and experience concerning the reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* (internal quotation marks and citation omitted).

Here, as discussed previously, Ms. Whitehead seeks $9,525 in attorney's fees. (Doc. 48 at 11). That figure is predicated on an hourly rate of $350 for her lawyer, Edward Wimp, who has been admitted to practice law in Florida since 2019,[6] and an hourly rate of $150 for Mr. Wimp's paralegal, Michael Augello. *Id.* at 10–11; (Doc.

---

[6] *See* Florida Bar, *Member Profile of Edward Wimp*, https://www.floridabar.org/directories/find-mbr/profile/?num=1015586 (last visited Nov. 25, 2024).

48-2). Ms. Whitehead submitted documentation reflecting the hours billed by Messrs. Wimp and Augello (Doc. 48-2) but did not tender any evidence that such hourly rates are reasonable in the prevailing market, *see* (Doc. 46). Nor did Ms. Whitehead cite any cases from this District in which courts have approved similar rates for like counsel and their paralegals. *See id*. The absence of such evidence and legal authority alone undermines Ms. Whitehead's fee request.

 Irrespective of this deficiency, I find these rates to be unsupported. Commencing with Mr. Wimp, my own knowledge and experience of the prevailing market rates for attorneys in this geographical area lead me to conclude that this rate is too high given that Mr. Wimp has only five years of experience. *Norman*, 628 F.2d at 1303. A review of the decisional law bolsters this conclusion. *See*, *e.g.*, *Rudy v. Best Elec. Air Conditioning & Plumbing LLC*, 2024 WL 4201966, at *2–3 (M.D. Fla. Sept. 4, 2024) (determining that an hourly rate of $350 was proper for a lawyer in a consumer protection case who had approximately twenty years of experience) (citations omitted), *report and recommendation adopted*, 2024 WL 4264861 (M.D. Fla. Sept. 23, 2024); *Shehata v. Haddad*, 2024 WL 3650649, at *3 (M.D. Fla. May 6, 2024) (finding that an hourly rate of $375 was reasonable in a civil rights case for counsel with approximately twenty years of experience). In my estimation, the appropriate hourly rate for Mr. Wimp under the circumstances is $300. *See Jacob v. Bais Yisroel Cmty. Ctr. of Tampa Bay, LLC*, 2024 WL 4103601, at *3 (M.D. Fla. Aug. 23, 2024) (observing that the hourly rates awarded for attorneys with five or fewer years of experience was between $195 and $295) (citations omitted); *Cirrincione v. Davey Tree Expert Co.*, 2023

13

WL 3172500, at *1 (M.D. Fla. May 1, 2023) (authorizing an hourly rate of $310 for a lawyer with six years of experience); *Cunningham v. Sw. Airlines*, 548 F. Supp. 3d 1169, 1172 (M.D. Fla. 2021) (deeming an hourly rate of $245 to be reasonable for counsel in a Title VII civil rights action).

I likewise conclude that Mr. Augello's hourly rate is too high. While I recognize that some courts have awarded $150 per hour for services performed by a paralegal, there is a dearth of information before the Court about Mr. Augello's professional background and qualifications as a paralegal. Accordingly, I recommend that his hourly rate be reduced to $100. *See Vasquez v. Direct Home Logistics Inc.*, 2024 WL 4518560, at *4 (M.D. Fla. Oct. 17, 2024) (Jung, J.) (ruling that an hourly rate of $100 was reasonable for work performed by paralegals); *Piper v. Metro Sols., LLC*, 2021 WL 1341460, at *9 (M.D. Fla. Feb. 16, 2021) (approving an hourly rate of $95 absent any information about the paralegal's experience), *report and recommendation adopted*, 2021 WL 1050140 (M.D. Fla. Mar. 19, 2021).

Having decided the applicable hourly rates, I turn to the reasonable number of hours expended. Together, Messrs. Wimp and Augello billed approximately thirty hours from the inception of this case through the present. (Doc. 48-2). The bulk of Mr. Augello's time, however, involved filing documents with either the Court or the Equal Employment Opportunity Commission. *Id.* This type of clerical work—to which Mr. Augello dedicated 5.1 hours—is not compensable. *See McDonald v. Hunter Warfield, Inc.*, 2022 WL 1095027, at *6 (M.D. Fla. Jan. 24, 2022) (explaining that the time billed for e-filing was clerical in nature and that while such tasks were "necessary

for the case to proceed in an organized manner, they [were] not the type of expense that should be shifted to defendant") (citation omitted), *report and recommendation adopted*, 2022 WL 807438 (M.D. Fla. Mar. 17, 2022).

Utilizing the hourly rates of $300 for Mr. Wimp and $100 for Mr. Augello, and the adjusted hours billed by Mr. Augello, I recommend that Ms. Whitehead be awarded $7,480 in attorney's fees.[7]

### E.

The amount and nature of the costs that are taxable in this action are governed by federal law. *Diperna v. GEICO Gen. Ins. Co.*, 2016 WL 7246094, at *8 (M.D. Fla. June 27, 2016) (noting that "federal law generally determines what costs may be awarded to a prevailing party in federal court") (citation omitted). The starting point in addressing this issue is Federal Rule of Civil Procedure 54(d), which states that costs other than attorney's fees "should be allowed to the prevailing party" unless a federal statute, federal rule, or court order provides otherwise. Fed. R. Civ. P. 54(d)(1). Rule 54 creates a presumption in favor of awarding costs to the prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (per curiam) (citation omitted).

The costs to be granted pursuant to Rule 54 are not without limits, however. Instead, a district court ordinarily may not award costs to a prevailing party unless they are specified in 28 U.S.C. § 1920. *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302

---

[7] I arrived at this figure by adding the $7,380 for the time spent by Mr. Wimp ($300 x 24.6 hours) to the $100 for the time expended by Mr. Augello ($100 x 1 hour). (Doc. 48-2).

15

F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).  The fees and expenses permitted under section 1920 consist of the following: (1) fees of the clerk and the marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court appointed experts and interpreter services.  28 U.S.C. § 1920(1)-(6).

The party seeking taxation ultimately bears the burden of proving entitlement to the costs enumerated in section 1920.  *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994) (per curiam) (finding that the burden rested with the fee applicant to submit a request for expenses that enabled the court to evaluate what expenses were incurred in the litigation); *Pelc v. Nowak*, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (stating that a failure to provide sufficient detail or supporting documentation "verifying the costs incurred and the services rendered can be grounds for denial of costs") (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

Here, Ms. Whitehead requests a total of $692.18 in costs.  (Doc. 48 at 12).  This amount is comprised of the $402 filing fee, two service of process charges totaling $120, a $104 charge for the evidentiary hearing transcript, and $66.18 in postage.  *Id.* at 11.  Notably, Ms. Whitehead does not tender any receipts buttressing these amounts, despite a previous directive that she do so.  (Doc. 46).  At the evidentiary hearing, however, Ms. Whitehead did supply the Court with a declaration from her attorney

attesting that she incurred the sought-after costs, although that submission was prepared prior to her payment for the transcript.

Fees attendant to service of process are generally taxable under section 1920(1) as long as they do not surpass the statutory limit set forth in 28 U.S.C. § 1921, which represents the allowable rate assessed by the United States Marshals Service. *See Beach-Mathura v. Am. Airlines, Inc.*, 571 F. App'x 810, 812–13 (11th Cir. 2014) (per curiam) (reversing a district court's award of service of process fees that exceeded the sanctioned rate under section 1921); *W&O, Inc.*, 213 F.3d at 624 ("[A] district court does not abuse its discretion in taxing private process server fees that do not exceed the statutory fees authorized in [section] 1921."). The Marshals Service is currently authorized to charge $65 per hour for each item personally served, plus travel costs and other out-of-pocket expenses. *See* 28 C.F.R. § 0.114(a)(3). Given that Ms. Whitehead seeks to recover two charges of $60 for service of process (Doc. 48-2), her request is well founded.

Section 1920(2) authorizes the award of court reporter costs for printed or electronically recorded transcripts, provided those transcripts were necessary for use in the action. 28 U.S.C. § 1920(2); *W&O, Inc.*, 213 F.3d at 620–21 (citation omitted). The transcript of the evidentiary hearing satisfies this requirement, as I instructed Ms. Whitehead to order the transcript in connection with the filing of the instant motion. (Doc. 46). Ms. Whitehead is thus entitled to be reimbursed the $104 she paid for the transcript.

The charges Ms. Whitehead seeks for postage, however, are not compensable. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam) (describing amounts spent on postage as "clearly nonrecoverable" under section 1920); *Nat'l Staffing Sols., Inc. v. Young Holdings & Invs., LLC*, 2020 WL 6587246, at *2 (M.D. Fla. Aug. 13, 2020) (Jung, J.) (same) (citations omitted).[8] I therefore recommend that Ms. Whitehead not be awarded the $66.18 in postage fees she requests. This leaves Ms. Whitehead with an award of $626 in costs, and a total award of $28,756.

### III.

In light of the foregoing, I respectfully recommend that the Court:

1. Grant in part and deny in part Ms. Whitehead's *Third Motion for Entry of Default Final Judgment on the Issue of Damages* (Doc. 48) as described herein.

2. Direct the Clerk of Court to enter default judgment in favor of Ms. Whitehead and against FDS in the total amount of $28,756.

Respectfully submitted this 26th day of November 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

[8] Ms. Whitehead does not explain the purpose of any of these mailing charges in any event. (Docs. 48, 48-2).

## **NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable William F. Jung, United States District Judge
Counsel of record